# IN THE SUPREME COURT OF THE STATE OF NEVADA

RAMON DESAGE, AN INDIVIDUAL;
AND CADEAU EXPRESS, INC., A
NEVADA CORPORATION,
Appellants,
vs.
AW FINANCIAL GROUP, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Respondent.

No. 71919

FILED

APR 22 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from district court orders confirming an arbitration award and denying motions to change venue and for a preliminary injunction. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

*Relevant Facts and Procedural History*

Appellants Ramon DeSage, a Nevada resident, and Cadeau Express, Inc., a Nevada corporation (collectively, DeSage), defaulted on several promissory notes in favor of respondent AW Financial Group, LLC, a Nevada limited-liability company. AW filed an action in Nevada state district court concerning these promissory notes, each with identical choice-of-law, forum-selection, and binding-arbitration provisions. DeSage moved to dismiss the action for lack of subject-matter jurisdiction and failure to state a claim. The district court compelled the parties to arbitrate in California but stayed the case, in lieu of dismissal.

The arbitrator awarded AW nearly $37 million. AW then moved to confirm the award in the stayed Nevada action. DeSage moved to change venue and to dismiss, asserting that the district court lacked subject-matter jurisdiction to confirm the award. He alternatively moved

20-15195

to vacate the award. The district court denied DeSage's motions, confirmed the award, and entered judgment against DeSage, who appeals. The issue presented is whether at any point the district court exceeded its authority. Concluding it did not, this court affirms.

*Discussion*

The promissory notes had identical provisions concerning choice of law, forum selection, and binding arbitration:

> Applicable Law. This Note shall be construed in accordance with and shall be governed by the internal laws of the State of California applicable to contracts made and wholly performed therein which shall govern the validity, construction, performance and effect of this Note. The Superior Court of Los Angeles County and/or the United States District Court for such County shall have jurisdiction and venue over all disputes between the parties. The parties hereby irrevocably submit and consent to the non-exclusive jurisdiction of any federal or state court located within Los Angeles, California over any dispute arising out of or relating to this Note.
>
> . . .
>
> Arbitration. Any and all disagreements or controversies arising with respect to this Note, or with respect to its application to circumstances not clearly set forth in this Note, shall be settled by, and only by, binding arbitration to be held, and the award made, in Los Angeles County, California, pursuant to the then-existing commercial arbitration rules of the American Arbitration Association. . . . A decision in any such arbitration shall apply both to the particular question submitted and to all similar questions arising thereafter and shall be binding and conclusive upon all parties and shall be enforceable in any court having jurisdiction over the party to be charged.

DeSage argues that, read together, these provisions reflect the parties' intent that California was to be the exclusive forum for resolving all issues incidental to arbitration. DeSage accordingly argues that the district court lacked subject-matter jurisdiction over AW's action from the outset. DeSage's arguments specifically challenge the district court's jurisdiction under these provisions to order the parties to arbitrate and, after arbitration, its jurisdiction to confirm the resulting arbitration award.

*Standard of review*

This court reviews questions of law, including questions of contract interpretation and subject-matter jurisdiction, de novo. *Am. First Fed. Credit Union v. Soro*, 131 Nev. 737, 739, 359 P.3d 105, 106 (2015). This review requires first reading the contract "as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions." *Nat'l Union Fire Ins. Co. of Pa., Inc. v. Reno's Exec. Air, Inc.*, 100 Nev. 360, 364, 682 P.2d 1380, 1383 (1984) (further stating that the "court must look to the entire contract" to truly understand it). Contracts are enforced "as written" to the extent their text is "clear and unambiguous." *Soro*, 131 Nev. at 739, 359 P.3d at 106 (quoting *Davis v. Beling*, 128 Nev. 301, 321, 278 P.3d 501, 515 (2012)). An arbitration agreement is "fundamentally a matter of contract" *and* statute. *See Principal Invs., Inc. v. Harrison*, 132 Nev. 9, 14-15, 14 n.3, 366 P.3d 688, 692 & n.3 (2016) (stating "Nevada's similarly fundamental policy favoring the enforceability of arbitration agreements as written," citing NRS 38.219(1)). "The jurisdiction and powers of a court with respect to the enforcement of arbitration proceedings are governed by the terms of the statutes . . . or contracts conferring them . . . ." 6 C.J.S. *Arbitration* § 67 (2016). This court reviews questions of law, including questions of statutory interpretation and subject-matter jurisdiction, de novo. *Schettler v. RalRon Capital Corp.*, 128 Nev. 209, 214, 275 P.3d 933,

936 (2012); *Harris Assocs. v. Clark Cty. Sch. Dist.*, 119 Nev. 638, 641, 81 P.3d 532, 534 (2003).

*The district court had authority to order arbitration*

We consider the contracts themselves first. A district court will dismiss a complaint pursuant to a mandatory forum-selection clause only if the clause specifies a non-Nevada forum with unequivocal "words of exclusivity." *Soro*, 131 Nev. at 742-43, 359 P.3d at 108. The parties' forum-selection provision here not only lacks words of exclusivity; it states, specifically, that it is "non-exclusive." *See id.* at 740-43, 359 P.3d at 106-08 (distinguishing between exclusive and nonexclusive forum-selection clauses). DeSage argues that under controlling California law, he was entitled to an evidentiary hearing regardless of whether the forum-selection clause was ambiguous, apparently invoking *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 645 (Cal. 1968), which permits parol evidence to contradict the meaning of even unambiguous contractual text. *See Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 569 (9th Cir. 1988). Although we acknowledge that California law generally controls questions of interpretation regarding the contracts at hand, Nevada courts apply Nevada law to interpret forum-selection clauses as enforceable. *See Soro*, 131 Nev. at 738-40, 359 P.3d at 106-08 (applying Nevada law to interpret a forum-selection clause despite a choice-of-law clause directing courts to construe the contract under Utah law); *Tuxedo Int'l Inc. v. Rosenberg*, 127 Nev. 11, 21-26, 251 P.3d 690, 696-700 (2011) (applying Nevada law to interpret a forum-selection clause and a choice-of-law clause specifying that "the Agreement will be governed by the laws of Peru"); *see also, e.g.*, John F. Coyle, *The Canons of Construction for Choice-of-Law Clauses*, 92 Wash. L. Rev. 631, 681 (2017) (noting that several states follow an "imperialistic" rule—that the law of the forum state governs the

interpretation of certain clauses regardless of an expressed choice of law). Under Nevada law, which controls this issue, "parol evidence may not be used to contradict the terms of a written contractual agreement." *Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 281, 21 P.3d 16, 21 (2001). Because the forum-selection clause was unambiguously nonexclusive, the contract did not prohibit the parties from filing suit in Nevada, and the district court accordingly was not obliged to dismiss this case under *Soro*. *See* 131 Nev. at 742-43, 359 P.3d at 108.

We consider the applicable statutes second. Nevada has adopted the revised Uniform Arbitration Act of 2000 (RUAA), codified at NRS 38.206-.248. Two provisions, NRS 38.206 and NRS 38.216, govern judicial decisions on initial enforcement matters like ordering parties to arbitrate. *See* Restatement (Second) of Conflict of Laws § 219 (Am. Law Inst. 1971) ("The method of enforcing an arbitration agreement is [generally] determined by the local law of the forum."). Nevada's RUAA provides for the district court's jurisdiction over enforcement matters like compelling parties to arbitrate out-of-state: "A court of this state having jurisdiction over the controversy and the parties may enforce an agreement to arbitrate." NRS 38.244(1). Under the RUAA, courts presumptively decide whether an arbitration agreement exists, is enforceable, and applies to a particular claim. NRS 38.219(2); NRS 38.244(1). Parties must "clearly and unmistakably" express a contrary intent to avoid the court's presumptive authority under NRS 38.219(2) to decide questions of an arbitration agreement's enforceability and scope. *See Clark Cty. Pub. Emps. Ass'n v. Pearson*, 106 Nev. 587, 590, 798 P.2d 136, 137 (1990) ("[T]he question of arbitrability is [generally] to be decided by the district court, not the arbitrator.").

No clear and unmistakable waiver of NRS 38.219(2) appears in the notes at issue. Therefore, the district court had jurisdiction to determine whether the issues raised by the parties were subject to arbitration. *See* NRS 38.244(1). The district court accordingly did not err under *Pearson* by declining to dismiss the case in favor of arbitration of these initial issues. The district court further had jurisdiction to compel arbitration. *See* NRS 38.244(1). And the district court did not abuse its discretion by staying the case pending arbitration, because "the court may stay the judicial action rather than dismissing it" even "[i]f a court orders the parties to arbitrate." 1 Larry E. Edmonson, *Domke on Commercial Arbitration* § 22:22 (3d ed. 2019); *see* NRS 38.244(1). To the extent DeSage argues on appeal that the district court should have dismissed the complaint initially because venue was improper or inconvenient, those arguments are waived. He did not move to change or otherwise challenge venue initially. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court . . . is deemed to have been waived and will not be considered on appeal.").

After AW moved to confirm the award, DeSage moved to change venue to the Superior Court of Los Angeles, where DeSage had already petitioned to vacate the award. DeSage argues that the district court should have dismissed the Nevada action because, under California law, venue was not proper in Clark County. However, "[t]he appropriate venue of an action is a procedural matter." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). Nevada courts do not apply another jurisdiction's venue rules. Rather, "[a] court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the [substantive] rules of another state to resolve other issues in the case."

Restatement (Second) of Conflict of Laws § 122 (Am. Law Inst. 1971); 17A Am. Jur. 2d *Contracts* § 253 (2016); *see also, e.g., Alexander v. Superior Court*, 8 Cal. Rptr. 3d 111, 113 (Ct. App. 2003) ("Under state law, therefore, a venue selection clause is purely an intrastate issue involving the selection of a county in which to hold the trial."). Thus, the law of the forum, here Nevada, prescribes venue, a strictly intrastate procedural matter. *See* NRS 38.246 (RUAA's venue provision).

*The district court had authority to confirm the award*

DeSage's second motion to dismiss challenged the district court's subject-matter jurisdiction over the award's confirmation. The district court confirmed the award under Nevada's RUAA after concluding that section 1292.6 of the California Code of Civil Procedure, Cal. Civ. Proc. Code (CCP) § 1292.6 (West 2019), a provision of the California Arbitration Act (CAA), CCP §§ 1280-1294.4, conferred concurrent jurisdiction to confirm the award. Having compelled the parties to arbitrate, the district court concluded that it retained jurisdiction over ancillary matters such as confirmation of an eventual award. DeSage argues that California law, including the CAA, controls, and that the Nevada RUAA's jurisdiction provision, NRS 38.244(2), precluded the district court from confirming the award, irrespective of California law. He also challenges the award on its merits under Nevada and California law.

Under the RUAA, "[a]n agreement to arbitrate providing for arbitration in this state confers exclusive jurisdiction on the court to enter judgment on an award under [this act]." NRS 38.244(2); *see also* Unif. Arbitration Act (RUAA) § 26(b), 7 U.L.A. 91 (2009). DeSage argues that Nevada's RUAA provides the exclusive source of a district court's jurisdiction to confirm an arbitration award, relying on case law interpreting the former UAA. Under the former UAA, "[t]he making of an

agreement . . . providing for arbitration in this State confers jurisdiction on the court to enforce the agreement under this Act and to enter judgment on an award thereunder." Unif. Arbitration Act (UAA) § 17 (Unif. Law Comm'n 1956). Courts interpreting the former UAA have uniformly held that the UAA provides the sole source of a state court's jurisdiction over arbitration matters, including over award confirmations. *See, e.g., Artrip v. Samons Constr., Inc.,* 54 S.W.3d 169, 172 (Ky. Ct. App. 2001) (holding that the "source of the court's jurisdiction to act in arbitration matters," including confirmation proceedings, "is wholly derived from the [UAA]"). However, that inference stands upon a plain-text analysis of the former UAA's section 17: If there is no agreement to arbitrate in the state, then that state has no jurisdiction. The negative inference is not the same under the RUAA: If there is no agreement to arbitrate in Nevada, then Nevada has no *exclusive* jurisdiction. In other words, RUAA section 26(b)'s plain text does not necessarily preclude application of another state's arbitration act for confirming an award under an agreement to arbitrate out of state. We acknowledge the RUAA's strong policy of mitigating forum shopping in confirmation proceedings. *See* RUAA § 26 cmt. 3. But the holding AW requests—that the RUAA prevents the courts of this state from applying the law chosen by the parties to govern the agreement—"would be quite inimical to the FAA's [and the RUAA's] primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms." *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 479 (1989). Rather, we "give effect to the contractual rights and expectations of the parties," *Harrison,* 132 Nev. at 14-15, 366 P.3d at 693 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 682

(2010)), but "without doing violence to" the letter or spirit of Nevada law. *See Volt*, 489 U.S. at 479 (applying the Federal Arbitration Act (FAA)).

DeSage has consistently argued for application of California law. California has not adopted the UAA or the RUAA, and nothing in the CAA precluded its application by a Nevada court. Under applicable California law, the parties' valid choice-of-law clause effectively invoked application of the CAA's substantive provisions. *See Volt*, 489 U.S. at 470, 472; *Mount Diablo Med. Ctr. v. Health Net of Cal., Inc.*, 124 Cal. Rptr. 2d 607, 615-16 (Ct. App. 2002). Unlike the RUAA's jurisdiction provision, the CAA provides for *non*exclusive jurisdiction of California courts over agreements to arbitrate. CCP § 1293 ("The making of an agreement in this State providing for arbitration to be had within this State shall be deemed a consent of the parties thereto to the jurisdiction of the courts of this State to enforce such agreement . . . by entering of judgment on an award under the agreement."). This provision therefore does not preclude application of the CAA by sister state courts.

DeSage also relies on CCP section 1292.2 to argue that only a California court in Los Angeles could properly confirm the arbitration award. But CCP section 1292.2 is *a venue provision*. *See* CCP § 1292.2. Contrary to DeSage's contention, California's venue statutes are purely procedural and take effect only in California. Nothing in these procedural venue provisions precludes parties from agreeing that they may seek enforcement of an award under the CAA in a different forum. *See Alexander*, 8 Cal. Rptr. 3d at 115 ("Moreover, although we have acknowledged a policy favoring access to California courts by resident plaintiffs, we likewise conclude that the policy is satisfied in those cases

where, as here, a plaintiff has freely and voluntarily negotiated away his right to a California forum.").

We need not consider whether DeSage's initial motion to dismiss constituted a petition for purposes of concurrent jurisdiction under CCP section 1292.6, upon which the district court relied. While the statute mandates ongoing exclusive jurisdiction once a petition (for instance, a motion to compel) has been filed under the CAA, *see* CCP § 1292.6, the absence of any formerly filed petition under the CAA does not necessarily defeat jurisdiction to confirm altogether—it merely defeats mandatory, exclusive, ongoing jurisdiction under CCP section 1292.6—once invoked. *See Tutti Mangia Italian Grill, Inc. v. Am. Textile Maint. Co.*, 128 Cal. Rptr. 3d 551, 556 (Ct. App. 2011) (stating that a motion to compel arbitration under CCP section 1281.2 "is not essential to the jurisdiction of a court to entertain a proceeding to confirm the award or to enter judgment thereon" (quoting *Kustom Kraft Homes v. Leivenstein*, 92 Cal. Rptr. 650, 654 (Ct. App. 1971))). Rather, we conclude that, irrespective of CCP section 1292.6, the Nevada district court had nonexclusive jurisdiction to enforce the arbitration award.

*The district court did not reversibly err in confirming the award*

"There is a strong preference for judicial confirmation of arbitration awards." 2 Larry E. Edmonson, *Domke on Commercial Arbitration* § 41:1 (3d ed. 2019). This court "review[s] a district court's confirmation of an arbitration award de novo." *WPH Architecture, Inc. v. Vegas VP, LP*, 131 Nev. 884, 887, 360 P.3d 1145, 1147 (2015) (quoting *Sylver v. Regents Bank, N.A.*, 129 Nev. 282, 286, 300 P.3d 718, 721 (2013)). However, "the scope of the district court's review of an arbitration award (and, consequently, [this court's] de novo review of the district court's decision) is extremely limited, and is 'nothing like the scope of an appellate

court's review of a trial court's decision.'" *Knickmeyer v. State, ex rel. Eighth Judicial Dist. Court*, 133 Nev. 675, 676, 408 P.3d 161, 164 (Ct. App. 2017) (quoting *Health Plan of Nev., Inc. v. Rainbow Med., LLC*, 120 Nev. 689, 695, 100 P.3d 172, 176 (2004)). "A reviewing court should not concern itself with the 'correctness' of an arbitration award and thus does not review the merits of the dispute." *Bohlmann v. Byron John Printz & Ash, Inc.*, 120 Nev. 543, 547, 96 P.3d 1155, 1158 (2004) (internal quotation marks omitted), *overruled on other grounds by Bass-Davis v. Davis*, 122 Nev. 442, 452 n.32, 134 P.3d 103, 109 n.32 (2006); *see Moncharsh v. Heily & Blase*, 832 P.2d 899, 900 (Cal. 1992) (stating that, with few exceptions, "an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties"). "The party seeking to attack the validity of an arbitration award has the burden of proving, by clear and convincing evidence, the statutory or common-law ground relied upon for challenging the award." *Health Plan of Nev.*, 120 Nev. at 695, 100 P.3d at 176; *Royal All. Assocs., Inc. v. Liebhaber*, 206 Cal. Rptr. 3d 805, 815 (Ct. App. 2016) ("The party seeking to vacate an arbitration award bears the burden of establishing that one of the six grounds listed in section 1286.2 applies and that the party was prejudiced by the arbitrator's error.").[1]

---

[1]No choice-of-law issue arises to the extent the chosen law and forum law accord. *LN Mgmt. LLC Series 5105 Portraits Place v. Green Tree Loan Servicing LLC*, 133 Nev. 394, 396, 399 P.3d 359, 360 (2017) ("The immediate effect of this act is the same regardless of which circuit law is applied. Thus, no conflict of laws issue arises at this point."); *see also* NRS 47.140(8) (providing that the laws of other states are subject to judicial notice); *Geller v. McCown*, 64 Nev. 102, 105, 177 P.2d 461, 463 (1947) ("Where the existence of a foreign law is ingredient of cause of action, formal allegation and proof of it is necessary."), *reh'g denied* 64 Nev. 102, 178 P.2d 380 (1947).

DeSage challenges the award's merits on several grounds. First, he argues that the district court should have vacated the award because the arbitrator refused to postpone the arbitration pending DeSage's criminal case. Second, he argues that the arbitrator refused to admit material evidence. Third, he argues that the award should be vacated because the underlying agreements were illegal under California law.

*First.* DeSage argues that the award must be vacated under CCP section 1286.2(a)(5) because the arbitrator refused to postpone the arbitration proceeding pending the criminal action. After the parties had initiated arbitration proceedings in 2011, a federal indictment charged DeSage on multiple counts of wire fraud, money laundering, tax evasion, and conspiracy to defraud. He invoked his Fifth Amendment privilege and did not testify at all during discovery or at the arbitration proceeding, which commenced in 2016. "[T]he court shall vacate the award if . . . rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor . . . ." CCP § 1286.2(a)(5); *see also* NRS 38.241(1)(c) (providing substantially the same). The applicable inquiry is twofold: "First, the trial court must determine whether the arbitrator abused his or her discretion by refusing to postpone the hearing upon sufficient cause being shown. Second, if there was an abuse of discretion, the trial court must determine whether the moving party suffered substantial prejudice as a result." *SWAB Fin. v. E\*Trade Sec.*, 58 Cal. Rptr. 3d 904, 916 (Ct. App. 2007); *see also* 6 Cal. Jur. 3d *Arbitration and Award* § 165 (2019). We conclude that DeSage has failed to show that the arbitrator abused his discretion in refusing DeSage's repeated requests for a blanket stay. The arbitrator repeatedly considered DeSage's requests, cited the appropriate standard, and then rejected the

arguments presented. Additionally, the length of time involved in the criminal case here (nearly six years), and DeSage's blanket refusal to testify at all, distinguish this case from those on which DeSage relies. We therefore conclude that the award should not be vacated under CCP section 1286.2(a)(5) on this basis.

*Second.* DeSage also argues that the award must be vacated under CCP section 1286.2(a)(5) because the arbitrator refused to hear material evidence. We cannot agree. "[A]n allegation of failure of an arbitrator to consider evidence is not tantamount to alleging a refusal to hear evidence." 6 Cal. Jur. 3d *Arbitration and Award* § 166 (2019). An arbitration is not a full trial, and CCP section 1286.2(a)(5) "does not provide a back door through which parties may routinely test the validity of legal theories of arbitrators," including their evidentiary rulings. *Id.* In this context, "'hearing' does not [even] necessarily include 'an opportunity to present live testimony or be subject to cross examination,'" let alone an opportunity to have any and all relevant evidence be weighed in the final determination. *See Schlessinger v. Rosenfeld, Meyer & Susman*, 47 Cal. Rptr. 2d 650, 656 (Ct. App. 1995) (quoting *Buxton v. Lynaugh*, 879 F.2d 140, 145 (5th Cir.1989), *cert. denied* 497 U.S. 1032 (1990)). The arbitrator here consistently allowed the parties to brief evidentiary issues pertaining to disputed facts. "Not every evidentiary ruling by an arbitrator can or should be reviewed by a court." 6 Cal. Jur. 3d *Arbitration and Award* § 166. "Having chosen arbitration over civil litigation, a party should 'reap the advantages that flow from the use of that nontechnical, *summary procedure*.'" *Schlessinger*, 47 Cal. Rptr. 2d at 656 (quoting *Moncharsh*, 832 P.2d at 904). We therefore conclude that the award should not be vacated under CCP section 1286.2(a)(5) on this basis.

*Third.* DeSage finally argues that the arbitration award should be vacated because the contracts are illegal. Under California law, a party may challenge an arbitration award by challenging the legality of the entire contract. *Moncharsh*, 832 P.2d at 917 ("If a contract includes an arbitration agreement, and grounds exist to revoke the entire contract, such grounds would also vitiate the arbitration agreement."). California law, applicable to consumer but not commercial loans, renders unlawfully usurious loan agreements void ab initio. Cal. Fin. Code § 22750(a) (West 2013). The district court did not specifically address the issue of illegality in its order. "If the court makes no ruling, findings may be implied when clearly supported by the record." *Sierra Glass & Mirror v. Viking Indus., Inc.*, 107 Nev. 119, 125, 808 P.2d 512, 515 (1991); *see also Edmonds v. Perry*, 62 Nev. 41, 51, 140 P.2d 566, 571 (1943) ("As a general rule findings are to be construed so as to support the judgment."). DeSage did not request an evidentiary hearing on the issue of illegality. *See Ahdout v. Hekmatjah*, 152 Cal. Rptr. 3d 199, 215-16 (Ct. App. 2013) (establishing that a party challenging an award based on the underlying contract's illegality has a right to an evidentiary hearing). So he waived that right. *See Diversified Capital Corp. v. City of N. Las Vegas*, 95 Nev. 15, 21, 590 P.2d 146, 149 (1979) (opining that when a party does not request an evidentiary hearing, he may waive his right to one); *Tracy A. v. Superior Court*, 12 Cal. Rptr. 3d 684, 691-92 (Ct. App. 2004) (stating that the right to an evidentiary hearing "can be waived by failure to request the hearing"). The record supports the arbitrator's conclusion that the contracts here were not consumer loans and therefore not subject to the protection of California Financial Code section 22750(a). *See, e.g., In re Rose*, 266 B.R. 192, 193-94 (Bankr. N.D. Cal. 2001) (persuasively applying California law and concluding that section 22750

does not apply to commercial loans). "Absent *a clear expression of illegality* or public policy undermining this strong presumption in favor of private arbitration, an arbitral award should ordinarily stand immune from judicial scrutiny." *Moncharsh*, 832 P.2d at 919 (emphasis added). DeSage has not persuaded us that the contracts clearly express an illegal intent under California law. Nor does their enforcement offend "a fundamental policy of" Nevada. *See Progressive Gulf Ins. Co. v. Faehnrich*, 130 Nev. 167, 172, 327 P.3d 1061, 1064 (2014) (quoting Restatement (Second) of Conflict of Laws § 187 cmt. g (Am. Law Inst. 1988)); *see also Topaz Mut. Co. v. Marsh*, 108 Nev. 845, 852-53, 839 P.2d 606, 611 (1992) (noting the general rule—that Nevada courts will not enforce contracts made voidable under Nevada statutes—but that "the facts of this case compel us to reach a different result" and thus enforcing the contract).

Because DeSage has not provided any basis for vacating the award under California law, the district court, which had jurisdiction to do so, properly confirmed it. *See* CCP § 1286.2(a)(5); CCP § 1287.4 ("If an award is confirmed, judgment shall be entered in conformity therewith."). Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Pickering

_____, J.
Parraguirre

_____, J.
Cadish

cc: Hon. Nancy L. Allf, District Judge
Ara H. Shirinian, Settlement Judge
JK Legal & Consulting, LLC
Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC/Las Vegas
Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC/Atlanta
Levy, Small & Lallas
Eighth District Court Clerk